# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| **JAMES P. PATTERSON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 2:12CV38 NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of James P. Patterson, Jr. (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 14). Defendant has filed a brief in support of the Answer. (Doc. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 23).

## I.
## PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on December 10, and December 11, 2008, respectively, alleging a disability onset date of July 1, 2000.[2] (Tr. 10, 116-24). Plaintiff's

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

[2] Plaintiff's SSI application is not part of the administrative record. Its merits, however, are determined by the same five-step analysis that is applicable to Plaintiff's application for DIB.

application was denied and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 70-72, 75-83). At the hearing, Plaintiff amended his alleged onset date to December 2, 2007. Following the hearing, the ALJ issued a decision finding that Plaintiff was not disabled through the date of the decision. (Tr. 7-24). Plaintiff filed a request for review with the Appeals Council, which denied Plaintiff's request on April 3, 2012. (Tr. 1-6). As such, the ALJ's decision is the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step

five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel,

228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

<u>Brand v. Sec'y of Dep't of Health, Educ. & Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980); <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." <u>Ford v. Astrue</u>, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

<u>Baker v. Sec'y of Health & Human Servs.</u>, 955 F.2d. 552, 555 (8th Cir. 1992); <u>Polaski</u>, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. <u>See</u> <u>id.</u> The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the

plaintiff's appearance and demeanor at the hearing.  See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly discuss each Polaski factor."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)).  The ALJ need only acknowledge and consider those factors.  Id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  See

Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was born in 1969 and was 40 years old at the time of the hearing, alleged disability due to back problems, diabetes, hypertension, and bipolar disorder. (Tr. 172). He completed his GED, was living with his girlfriend and her three children, ages 6, 11, and 13, and last worked in December 2007. (Tr. 46-47).

The ALJ found Plaintiff met the insured status through September 30, 2010; that he had not engaged in substantial gainful activity since December 2, 2007, his amended onset date; he had the severe impairments of lumbar fracture, diabetes, hypertension, bipolar disorder, and history of polysubstance abuse; his complaint of disability due to headaches was not medically determinable; and Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ found that Plaintiff had the RFC to perform light work except that he could occasionally climb, stoop, kneel, crouch, crawl; he had to avoid uneven surfaces and fine detail work; and he could understand, remember, and carry out unskilled work and sustain attention and concentration to the same. As such, the ALJ concluded that Plaintiff was not disabled through the date of the decision.

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ rejected the opinion of Phillip W. Piney, M.D., Plaintiff's treating doctor, who opined Plaintiff was disabled; the evidence does not support a finding that Plaintiff can sustain work activities; given Plaintiff's handling limitations, he cannot perform the full range of sedentary work; Plaintiff's mental impairments met Listings 12.04 and 12.06; when considering Plaintiff's mental impairments, the ALJ failed to consider Plaintiff's functional ability as required by SSR 96-8p; additional evidence submitted to the Appeals Council warrants changing the ALJ's decision; and the testimony of the VE supports a finding that there is no work in the national economy which Plaintiff can perform. (Doc. 14).

A.      **Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails

to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.@) (citing <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. '' 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ=s credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  <u>See</u> <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>Hutsell</u>, 892 F.2d at 750; <u>Benskin</u>, 830 F.2d at 882.  To the extent that the ALJ did not specifically cite <u>Polaski</u>, other case law, and/or Regulations relevant to a consideration of Plaintiff=s credibility, this is not necessarily a basis to set aside an ALJ=s decision where the decision is supported by substantial evidence.  <u>See</u> <u>Randolph v. Barnhart</u>, 386 F.3d 835, 842 (8th Cir. 2004); <u>Wheeler v. Apfel</u>, 224 F.3d 891, 895 n.3 (8th Cir. 2000); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>Montgomery v. Chater</u>, 69 F.3d 273, 275 (8th Cir. 1995).

Additionally, an ALJ need not methodically discuss each <u>Polaski</u> factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  <u>See</u> <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000).  <u>See also</u> <u>Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004) (AThe ALJ is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is recognized and considered.@); <u>Strongson</u>, 361 F.3d at 1072; <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996).  In any case, A[t]he credibility of a claimant=s subjective testimony is primarily for the ALJ to decide, not the courts.@  <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001).  AIf an ALJ explicitly discredits the claimant=s testimony and gives good reason for doing so, [a court] will normally defer to the ALJ=s credibility determination.@  <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003).  <u>See also</u> <u>Halverson v. Astrue</u>, 600 F.3d 922, 932 (8th Cir. 2010);

Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff has an inconsistent work history. (Tr. 15). Plaintiff's work record since 2001 reflects that he had reported earnings of $3,263.85 in 2005, $3,230 in 2006, $2,132.63 in 2007, $914.91 in 2008, and nothing in 2009, all of which predate his amended onset date. An ALJ may discount a claimant's credibility based upon his poor work record. See Ramirez, 292 F.3d 576, 581 (8th Cir. 2002) (in making a credibility determination, the ALJ properly weighed heavily claimant's poor work record and fact that her prospective SSI benefits would exceed amount she was able to earn while working; this evidence suggested that claimant was not motivated to work); Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001); Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (holding that a claimant's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on his credibility); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (holding that sporadic work record failed to support claimant's credibility). A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. See Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility based upon his poor work record.[3] See Ownbey v. Sullivan, 5 F.3d 342, 345 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). Thus, the court finds the ALJ

_____

[3] Although the court recognizes that the ALJ may consider a claimant's financial motivation to qualify for benefits while assessing the credibility of a claimant's subjective complaints, the court further recognizes that such motivation should not be dispositive, because all disability claimants are financially motivated to some extent. See Ramirez. v. Barnhart, 292 F.2d 576, 582 (8th Cir. 2002) (citing Dodd v. Sullivan, 963 F.2d 171, 172 (8th Cir. 1992)); Fox v. Apfel, 980 F. Supp. 312, 317 (S.D. Iowa 1997)).

properly considered Plaintiff's work record and that substantial evidence supports the ALJ's decision in this regard.

Second, the ALJ considered that Plaintiff left his last job at General Mills when he was not allowed to take off for the birth of his child. (Tr. 15). Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. See Medihaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). The court finds the ALJ's decision, in this regard, is supported by substantial evidence.

Third, as considered by the ALJ, Plaintiff testified at the hearing that he is able to do laundry, wash dishes, play with children, and change the baby's diapers. (Tr. 13). The ALJ further considered that Plaintiff testified that he cared for a small child (Tr. 19) and walked for exercise (Tr. 16). While the undersigned appreciates that a claimant need not be bedridden to be disabled, a plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling Apain may be discredited by evidence of daily activities inconsistent with such allegations.@ Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). AInconsistencies between [a claimant=s] subjective complaints and [his] activities diminish [his] credibility.@ Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th

Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant=s daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds that the ALJ properly considered Plaintiff=s daily activities upon choosing to discredit his complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ=s decision in this regard.

Fourth, the ALJ considered that while Plaintiff's diabetes was under poor control, testing with an insulin pump suggested that better control was possible. (Tr. 15). Additionally, Plaintiff testified at the hearing that he had not had problems with excessively high blood sugars since he had been on an insulin pump. (Tr. 41). Also, when Plaintiff presented in the emergency room on September 15, 2008, for insulin shock, he reported that he had "been using his insulin pump ad lib, but got busy [the prior] night, did not eat supper, and was playing with his children." (Tr. 400). In June 2010, when Plaintiff reported he had not been drinking for four months, he reported that "having a clear mind helped" his mental status. (Tr. 844). In June 2010, when Plaintiff received medication therapy for his mental conditions, he reported that "[n]othing ha[d] ever worked like TGHm, gives me faith in meds, has been like a miracle." (Tr. 845). Conditions which can be controlled by treatment are not disabling. See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling). The court finds that the ALJ's decision, regarding control of his allegedly disabling conditions is supported by substantial evidence.

Fifth, the ALJ considered that there was evidence of Plaintiff's poor treatment compliance in that he missed taking his diabetes medications. In particular, the ALJ considered that Plaintiff's poor compliance was noted in December 2008. (Tr. 15). Also, when Plaintiff presented at the ER on December 23, 2008, he refused to participate in the examination, and was restless and combative, and, when an ambulance was called on January 6, 2009, Plaintiff refused treatment and transport. (Tr. 613-805). In January 2009, Arden Reynolds, M.D., reported Plaintiff was noncompliant with a back brace prescribed for his back pain (Tr. 16); in November and December 2009 and January, June, July, and September 2010, emergency care providers noted that Plaintiff refused treatment upon medical advice (Tr. 616, 656, 664, 668, 681, 685, 697, 701, 705); and, regarding diabetes control, Dr. Piney reported that in June 2010, Plaintiff admitted he did not "eat appropriately" (Tr. 813). On February 16, 2009, Plaintiff was advised to stop drinking. (Tr. 308). On February 18, 2009, when Plaintiff was evaluated for his mental conditions, it was reported he drank "3/4 pink of vodka [that] morning"; he had treatment for substance abuse one year earlier; and the longest period he refrained from drinking was "1½ months." Tr. 303-308. On this date, and subsequently, in March 2009, it was recommended that he stop drinking and go to Alcoholics Anonymous. (Tr. 839, 841, 847). On February 24, 2009, Plaintiff said he used his back brace, but reported that he was non-compliant regarding his taking 30-minute daily walks. (Tr. 458). Plaintiff testified at the hearing that he had trouble with his blood sugar when he drank alcohol and that he last used alcohol two weeks prior to the hearing. (Tr. 50). See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant=s failure to comply with prescribed medical treatment and lack of

significant medical restrictions is inconsistent with complaints of disabling pain). The court finds the ALJ properly considered Plaintiff's noncompliance and that the ALJ's decision in this regard is supported by substantial evidence.

Sixth, as considered by the ALJ, although in January 2009 Plaintiff told Dr. Reynolds that he was not drinking, Dr. Reynolds reported that Plaintiff smelled of alcohol. (Tr. 16, 425). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

**B.     Plaintiff's Mental Impairment:**

Section 12.00(a) lists mental disorders in diagnostic categories, which include, among others, affective disorders (' 12.04), and anxiety related disorders (' 12.06). Plaintiff argues the ALJ erred in finding that Plaintiff did not meet these listings, and in failing to consider Plaintiff's mental impairments when determining his functional ability.

Plaintiff claims he was bipolar and became depressed easily. In regard to depression, Plaintiff testified that when he became depressed, he did not want to do anything; he became angry around loud noises; he felt anxious and nervous; he got along with family, although he did not go out in public with them. (Tr. 17-18). In regard to bipolar disorder, Plaintiff testified he had three good days and four bad days a week; and on bad days, he became angry, yelled, and punched things. (Tr. 62-63).

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. ' 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

The mere existence of a mental condition, however, is not per se disabling. See <u>Dunlap v. Harris</u>, 649 F.2d 637, 638 (8th Cir. 1981). The sequential process for evaluating mental impairments is set out in 20 C.F.R. ' 404.1520a. This Regulation states that the steps set forth in ' 404.1520 also apply to the evaluation of a mental impairment. ' 404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. ' 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. ' ' 404.1520a(b)(1).

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.' 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. ' 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. ' 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either Anone, mild, moderate, marked, [or] extreme.@ 20 C.F.R. ' 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: A[n]one, one or two, three, four or more.@ <u>Id.</u> When Athe degree of []limitation in the first three functional areas@ is Anone@ or Amild@ and Anone@ in the area of decompensation, impairments are not severe, Aunless the evidence otherwise indicates that there is more than a minimal limitation in [a

claimant≈s] ability to do basic work activities.@ 20 C.F.R. ' 404.1520a(d)(1). When it is determined that a claimant≈s mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant≈s impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. ' 404.1520a(d)(2). If it is determined that a claimant has Aa severe mental impairment(s) that neither meets nor is equivalent in severity to any listing,@ the ALJ must then assess the claimant≈s RFC. See 20 C.F.R. ' 404.1520a(d)(3).

As a preliminary matter, the court notes that the ALJ considered Plaintiff's mental impairments only in terms of Listing 12.04, and not in terms of Listing 12.06, but that the analysis for "B" criteria for affective disorders is also applicable to anxiety-related disorders. See ' 12.B, 20 C.F.R. pt. 404, subpt. P, app. 1. As required by the Regulations, 20 C.F.R. ' 404.1520a(c)(2) & (3), as discussed above in regard to Plaintiff's credibility, the ALJ considered Plaintiff's testimony as to his activities of daily living, and concluded Plaintiff had *mild* restrictions in this area. In regard to social functioning, the ALJ considered Plaintiff lived with his girlfriend and children, and indicated he got along with family, and concluded that Plaintiff had mild difficulties in this area. In regard to concentration, persistence or pace, the ALJ concluded Plaintiff had *moderate* difficulties based on his indicating that he forgets to clean and take care of himself, test his blood sugar, or take his medications. The court finds the ALJ's decision, in this regard, is supported by substantial evidence. The ALJ further considered that Plaintiff had no episodes of decompensation, which had been for an extended duration. (Tr. 13-14.) In regard to episodes of decompensation, the court does note Plaintiff was hospitalized once after cutting his throat, (Tr. 829), but that a claimant is not necessarily unable to work because he

had one episode of decompensation.  See 20 C.F.R. ' 404.1520a(c)(4); Roe v. Chater, 92 F.3d 672, 676 n.6 (8th Cir. 1996) ("infrequent or rare incidents of deterioration or decompensation are not" repeated or continual deterioration or decompensation in work or work-like settings) (citing 20 C.F.R. § 404.1520a(b)(3)).  Thus, the ALJ's determination that Plaintiff did not have a severe mental impairment or combination of impairments - because he did not have at least two marked limitations or one marked limitation and repeated episodes of decompensation in the areas considered - is based on substantial evidence and consistent with the Regulations.  See 20 C.F.R. ' 404.1520a(d)(1).

As for medical records relevant to Plaintiff's alleged mental impairments, Plaintiff was evaluated by Karen McDonald, Psy.D., who reported on January 15, 2009, that Plaintiff had no difficulty relating to her; Plaintiff appeared to be experiencing severe mood swings; his affective responses were congruent; his speech was clear, logical, and coherent; there was no evidence of loose or bizarre thought associations; he was oriented in all four spheres and not psychotic; the quality of his concentration was problematic and his concentration was difficult; his abstract-conceptual thinking was intact; his memory functions were impaired; his mental control and social judgment skills were adequate; he functioned intellectually in the average range; and his math functions were intact.  Dr. McDonald also noted Plaintiff had polysubstance dependence. She diagnosed him with a Global Assessment of Functioning (GAF)[4] of 45.  A GAF score,

---

[4] Global assessment of functioning (AGAF@) is the clinician=s judgment of the individual=s overall level of functioning, not including impairments due to physical or environmental limitations.  See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994).  Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent Asome impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood,@ 41 to 50 represents Aserious,@ scores of 51 to 60 represent Amoderate,@ scores of 61 to 70 represent Amild,@ and scores of 90 or higher represent absent or minimal symptoms of impairment.  Id. at 32.  See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (A[A] GAF score of 65 [or 70] ... reflects ≻some mild symptoms (e.g. depressed mood or mild insomnia) OR

however, is not determinative of whether a claimant is disabled. See Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (GAF not essential to RFC's accuracy). The next month, February 2009, Plaintiff was found to have a GAF of 50. (Tr. 841).

Although records from Pike Medical Clinic reflect that a nurse practitioner reported that Plaintiff had depression, "nurse practitioner[s] ... are not . . . acceptable medical sources as defined by the Regulations." See 20 C.F.R. '' 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources).

In December 2008, records from St. Joseph Health Center reflect that Plaintiff had normal speech and affect, his mental status was normal, and he was alert and oriented, although on admission his primary symptoms included confusion, weakness, and altered mental status. (Tr. 504, 510). On October 28, 2009, Eddie W. Runde, M.D., reported, in regard to Plaintiff's mental status, that he was alert, fully oriented, and in no acute distress. (Tr. 605). In January 2010, Dr. Piney reported that Plaintiff had "mild anxiety neurosis" (Tr. 819); in June 2010, when Plaintiff was "not drinking much," Dr. Piney reported that Plaintiff was oriented, alert, and responsive, was in "good spirits," denied suicidal ideology, and was doing fairly well with his depressive disorder. (Tr. 813-28). See ' 404.1535(b)(2) (focusing on what "physical and mental limitations ... would remain if [claimant] stopped using drugs or alcohol"; test requires claimant's remaining limitations be disabling if he stopped using).

Additionally, Plaintiff submitted October 2010 records to the Appeals Council which are largely illegible but reflect that Plaintiff was stressed about breaking up with his girlfriend, see Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (depression was situational and not

---

some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.@ (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (alterations in original).

disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations), and that he was coping fairly well. (Tr. 310).

The ALJ did find that Plaintiff's bipolar disorder and history of polysubstance abuse were severe, and accounted for these limitations in his RFC in that he limited Plaintiff to understanding, remembering, and carrying out unskilled work and sustaining attention and concentration to the same. The court finds, in conclusion, that the ALJ's decision regarding the severity of Plaintiff's alleged mental impairments is based on substantial evidence and consistent with the Regulations and case law, and the additional records submitted to the Appeals Council do not establish otherwise. Further, to the extent the ALJ included non-exertional limitations in Plaintiff's RFC related to Plaintiff's mental impairments, the court further finds the ALJ's RFC determination is based on substantial evidence. See Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001) (AWhen determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant=s mental and physical impairments.@).

**C.      Plaintiff's Physical Impairments and Plaintiff's RFC:**

Plaintiff argues the record does not support the ALJ's determination that Plaintiff can sustain work activities and that the record does not support the ALJ's determination that Plaintiff can perform the full range of sedentary or light work. As stated above, the ALJ found Plaintiff can perform light work with limitations. The court has found that the ALJ's determination in regard to Plaintiff's mental limitations is based on substantial evidence. As such, the court will address Plaintiff's alleged physical limitations.

The Regulations define light work as ›involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds.@  20 C.F.R. ' 404.1567(b).

Additionally, A[s]ince frequent lifting or carrying requires being on one=s feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.@ SSR 83-10, 1982 WL 31251, at *6. 20 C.F.R. ' 404.1567(a) defines sedentary work as follows: ASedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.@ Indeed, SSR 85-15, 1985 WL 56857, at *5, states that A[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.@ The sitting requirement for the full range of sedentary work Aallows for normal breaks, including lunch, at two hour intervals.@ Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (Jul. 2, 1996). Additionally the range of sedentary jobs requires a claimant Ato be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work.@ Id. at 997 (citing 1996 WL 374185 at *7). Moreover, SSR 96-9p requires that Athe RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids.@ Id. It also states that Aa finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled.@ Id.

As for Plaintiff's claim of physical limitations, Plaintiff underwent examination after a December 2008 accident. December 2008 radiology records reflect only *minimal* degenerative disk disease of the cervical spine without acute fracture, *no evidence of acute cardiopulmonary process*, no obvious acute posttraumatic change of the pelvis, no evidence of acute sinusitis or fracture of the facial bones, no acute intracranial hemorrhage or findings in Plaintiff's brain, a compression deformity of L2 with a minimal retropulsed component, doubtful significant central canal stenosis at L2, an old compression deformity of L1, minimal compression deformities of the superior endplate of T12 and inferior endplate of T1, and *no* canal impingement or *evidence of significant degenerative disk disease*. Also, after Plaintiff's accident, his motor examination was "5/5," a new L2 fracture was reported, and he had 5/5 bilateral dorsiflexion and plantar flexion, as well as grip strength and elbow flexion and extension. (Tr. 363-77). Significantly, an October 27, 2009 radiology report states that Plaintiff's fractures at L1 and L2 were stable. (Tr. 548). George Tampy, M.D., reported repeatedly from March 2007, through March 2, 2009, that, upon examination, Plaintiff had no physical abnormalities, normal muscle tone and strength, no difficulty standing, and normal gait. (Tr. 481-93).

Dr. Runde reported, on October 28, 2009, that Plaintiff was able to dress and undress and get on and off the examination table without assistance; as for his upper extremities, Plaintiff had no tenderness to palpation, 5/5 muscle strength, normal sensation, and 5/5 grip strength, and was able to do fine finger movements; as for Plaintiff's lumbar spine, Plaintiff had slight tenderness, no muscle spasms, and pain with full lumbar range of motion; as for Plaintiff's lower extremities, he had 5/5 strength bilaterally, normal gait, abnormal sensation to light touch due to his diabetes, bilateral full hip range of motion, "but with full hip flexion he ha[d] increased lower back pain; and he had normal reflexes. Dr. Runde's diagnosis included lumbar spine fracture

and mild compression of the superior endplate of T12. (Tr. 604-605). The ALJ gave great weight to Dr. Runde's October 28, 2009 report because it was consistent with other medical evidence. See 20 CFR 494.1527(c)(3) (more weight given to medical opinions where supported by medical signs and laboratory findings) & (4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

In regard to Plaintiff's diabetes, as considered by the ALJ, Plaintiff did testify that he became sweaty and shaky four times a week with low blood sugars (Tr. 49-51), and during the period from March 2007, to March 2009, Dr. Thampy reported that Plaintiff had frequent and serious episodes of hypoglycemia. (Tr. 481-89). However, as discussed above and as considered by the ALJ, Plaintiff's diabetes was better controlled when Plaintiff was compliant and when he used an insulin pump, and it was frequently reported he was non-compliant.

To the extent Plaintiff contends the ALJ gave insufficient weight to the opinion of Dr. Pitney, this doctor opined that Plaintiff could lift/carry less than ten pounds, stand/walk for less than 2 hours and sit less than 6 hours in an 8-hour workday, and that Plaintiff was disabled since July 1, 2000, the court finds Dr. Pitney's opinion is not consistent with other medical evidence. See 20 C.F.R. 404.1527(c)(4). Further, Dr. Pitney merely indicated Plaintiff's inability to work by checking boxes on a form, see Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004) (treating physician=s checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence); Hogan, 239 F.3d at 961, and his conclusions are not supported by medically acceptable clinical and laboratory diagnostic techniques, see Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987).

Additionally, the ALJ discounted Dr. Pitney's opinion only after reviewing the record as a whole. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating

physician=s opinion does not automatically control or obviate the need to evaluate the record as whole and upholding the ALJ=s decision to discount the treating physician=s medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. ' 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).   The court finds that the ALJ gave proper weight to Dr. Pitney's opinion and that the ALJ's decision, in that regard, is supported by substantial evidence.

As for Plaintiff's arguments that the additional evidence which he submitted to the Appeals Council establishes that he is disabled, the court has found above that any additional evidence relevant to Plaintiff's alleged mental impairments does not establish Plaintiff is disabled.  The court, likewise, finds that additional evidence submitted to the Appeals Council regarding Plaintiff's physical impairments does not established that Plaintiff is disabled.

The court has found above that the ALJ's determination, to the extent it incorporates Plaintiff's mental impairments, is supported by substantial evidence.  Additionally, the court finds that the ALJ's RFC determination regarding the combination of Plaintiff's mental and physical impairments is based on substantial evidence in the record as a whole, including all records submitted to the Appeals Council.  See Lauer, 245 F.3d at 703.

The ALJ submitted a hypothetical to a VE which described a person of Plaintiff's age, who could work at the light exertional level, occasionally climb, stoop, kneel, crouch, and crawl, avoid uneven surfaces and avoid fine detail work.  (Tr. 66).   The VE testified that there was

work in the national economy which such a person could perform.  The ALJ submitted a second hypothetical to the VE which described a person who was capable of performing work at the sedentary level, and who was limited to standing and/or walking less and sitting less than six hours in an 8-hour workday.  The VE testified that such a person would be unable to engage in full time work.  In his opinion the ALJ noted that he failed to include any mental limitations in the first hypothetical; that upon further consideration Plaintiff was limited to unskilled work; that the jobs which the VE testified the first hypothetical person could perform were unskilled and would not be precluded by the additional limitations.

Plaintiff does not take issue with the ALJ's finding that the jobs which the VE testified the first hypothetical person could perform are unskilled but rather argues that the ALJ erred in not finding Plaintiff disabled because the second hypothetical person would be unable to work. The ALJ, however, was not required to rely on a hypothetical which included limitations beyond those which he found credible.  See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (AThe ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.@), and the VE testified that there was work which Plaintiff could perform, see id. at 927 (ABased on our previous conclusion ... that >the ALJ's findings of [the claimant=s] RFC are supported by substantial evidence,= we hold that >[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner=s denial of benefits.=@).  The court finds, therefore, that the ALJ's determination that there was work which Plaintiff could perform and that, therefore, Plaintiff was not disabled is based on substantial evidence.  See Martise, 641 F.3d at 927 (ABased on our previous conclusion ... that >the ALJ's findings of [the claimant=s] RFC are supported by substantial evidence,= we hold that >[t]he hypothetical question was therefore

proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.") (quoting <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 889 (8th Cir. 2006); <u>Robson v. Astrue</u>, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); <u>Wingert v. Bowen</u>, 894 F.2d 296, 298 (8th Cir. 1990).

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 14,

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 2nd Day of May, 2014.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE